UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CRYSTAL THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.  2:14-cv-345-WTL-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Crystal Thompson requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Thompson's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II.  BACKGROUND

Thompson protectively filed for DIB on July 14, 2011, alleging that she became disabled on May 1, 2011, primarily due to bi-polar disorder, panic disorder, PTSD, substance abuse in remission, arthritis in her knees, status post knee surgery, and bilateral carpal tunnel syndrome. Thompson was born on March 28, 1982, and was 29 years old on the alleged disability onset date. Thompson has at least a high school education, and her past relevant work is unskilled.

Thompson's application was denied initially on September 15, 2011, and upon reconsideration on January 4, 2012. Thereafter, Thompson requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing, during which Thompson was represented by counsel, was held by ALJ John P. Giannikas on February 14, 2013. During the hearing, the vocational expert ("VE") was unable to give a complete answer to the first hypothetical posed to him. The record was held open to give the VE time to submit a complete answer. The VE provided the information and entered it into the record. Thompson's representative requested a supplemental hearing with a VE, and the ALJ held a supplemental video hearing on July 19, 2013. Thompson was present and represented by counsel. The VE also appeared at the supplemental hearing. The ALJ issued his decision denying Thompson's claim on July 23, 2013; the Appeals Council denied Thompson's request for review on September 2, 2014. Thompson then filed this timely appeal.

### III.  THE ALJ'S DECISION

The ALJ determined that Thompson met the insured status requirements of the Social Security Act through December 31, 2011. The ALJ determined at step one that Thompson had not engaged in substantial gainful activity since May 1, 2011, the alleged onset date. At steps two and three, the ALJ concluded that Thompson had the severe impairments of "Posttraumatic stress disorder (PTSD), dysthymia, polysubstance abuse in remission, chondromalacia [of] her bilateral [knees], lumbar pain with signs of spondylosis, and bilateral carpal tunnel syndrome," Record at 29, and that the impairments more than minimally limited Thompson's ability to perform the full range of basic work activities and therefore were severe within the meaning of the Regulations. The ALJ found that Thompson did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925, and 416.926). At step four, the ALJ determined that Thompson had the Residual Functional Capacity ("RFC") to:

> lift and/or carry and push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently. She can occasionally climb ramps or stairs, balance, stoop, crouch, or crawl. The claimant must avoid all kneeling, as well as avoid all ladders, ropes, or scaffolds. She can perform repetitive hand functions with her right side only on an occasional basis. The claimant can stand and/or walk for a total of four hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. She can understand, remember, and carry out simple and detailed instructions. The claimant can interact with supervisors and coworkers on an occasional and superficial basis. She may have no contact with the public. The claimant can handle routine changes in a work setting commensurate with her previous limitations.

R. at 31. Given this RFC, the ALJ determined that Thompson could not perform any of her past relevant work. At step five, the ALJ determined that Thompson could perform the requirements of a few representative occupations, such as bakery worker, conveyer line (D.O.T.#524.687-022;

4

light; SVP 2; 53,000 jobs nationally; 1,050 jobs in Indiana); mill stenciler (D.O.T.#659.685-026; light; SVP 2; 1,400 jobs nationally; 150 jobs in Indiana); and thermal surfacing machine operator (D.O.T.#679.685-018; light; SVP 2; 2,000 nationally; 200 jobs in Indiana). The ALJ indicated that, pursuant to SSR 00-4p, he had determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles* ("*DOT*"). Accordingly, the ALJ concluded that Thompson was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Thompson's brief (Dkt. No. 21) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In her brief in support of her complaint, the Plaintiff objects to the ALJ's decision for one reason: she argues that "[t]he Commissioner's Step Five finding that Plaintiff can perform other work existing in significant numbers is grounded in legal error and is not supported by substantial evidence." Dkt. No. 21 at 16. Specifically, the Plaintiff argues "that the expert's testimony about the *requirements of the jobs* he invoked and the *quantity which are available* for a person with her RFC is not sufficiently reliable to provide substantial evidence for the Commissioner's Step Five finding." Dkt. No. 29 at 2. The Plaintiff points to what she terms inconsistencies between the VE's testimony and the *DOT* and also what she argues is the ALJ's erroneous determination that he could not consider other vocational evidence regarding how the job of a bakery worker is performed.

With respect to the alleged inconsistency, the VE testified that the bakery worker job requires a person to "essentially stand and observe the confections as they are cooling down the

line and removing the confections from the line that are imperfect." R. at 60-61. As the Plaintiff points out, "a job which requires a person to stand most of the day cannot be performed by a person who is sitting for half of it." Dkt. No. 29 at 3. The bakery worker job is "classified as light exertion in the DOT," R. at 119, and the expert indicated it could be accommodated by the reduced range of light work that the hypothetical questions contemplated. However, the *DOT* describes this job as requiring light exertional demands, which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. The only vocational evidence suggesting someone can work as a bakery worker while sitting for one half of an eight-hour work day is the testimony of the Commissioner's vocational witness. The RFC for the Plaintiff indicates that the Plaintiff can stand for at most 4 hours a day.

Despite this inconsistency, the ALJ found that there "are no conflicts between the DOT and the VE testimony of which I have been made aware." R. at 38. Due to the ALJ's failure to identify and resolve this inconsistency, his finding is thus not supported by substantial evidence. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) ("unresolved potential inconsistency in the evidence . . . should have been resolved" and failure to do so required remand); SSR 00-4p ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").[2]

Of additional concern to the Court is whether the two other jobs cited by the VE, mill stenciler and thermal surfacing machine operator, exist "either in the region where [the Plaintiff] live[s] or in several other regions of the country." C.F.R. ' 404.1566. The VE testified that he

---

[2] On remand, the ALJ also should consider evidence submitted by the Plaintiff on updated vocational evidence showing that the position requires one to use "one's own hands and arms in handling, installing, forming, positioning, and moving materials, or in manipulating things" and "frequently" requires one to use his or her hands. R. at 350, 352.

was not aware whether the jobs existed in the state of Indiana. R. at 55, 37. The ALJ simply found that "there was no evidence to suggest that these jobs do not exist in Indiana." R. at 37. The Commissioner has the burden of proof on this issue. The Seventh Circuit has provided guidance in this area in recent years. *See Voigt v. Colvin*, 781 F.3d 871 (7th Cir. 2015); *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs."); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). The gist of these opinions is that the *DOT* is an outdated catalog of jobs, with many entries dating back nearly 40 years. Moreover, it appears as though the *DOT* is not an accurate portrayal of the numbers of jobs that exist in its various categories.

The concerns expressed by the Seventh Circuit are relevant to the Plaintiff's case, and the ALJ should address them on remand. A more careful analysis is required.

## VI.    CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/1/16

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.